## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Lamar Houston,<br><br>               Petitioner,<br><br>v.<br><br>Vicki Janssen,[1]<br><br>               Respondent. | Case No. 15-cv-3075 (WMW/HB)<br><br><br>**REPORT AND RECOMMENDATION** |

HILDY BOWBEER, United States Magistrate Judge

      Petitioner Lamar Houston was found guilty after a jury trial of one count of third-degree criminal sexual conduct and was sentenced to a 91-month term of imprisonment. The Minnesota Court of Appeals affirmed Houston's conviction on direct appeal. *See State v. Houston*, No. A13-1358, 2014 WL 5313711 (Minn. Ct. App. Oct. 20, 2014), *rev. denied* (Dec. 30, 2014). The Minnesota Supreme Court declined review.

      This matter is before the Court on Houston's petition for a writ of habeas corpus, brought pursuant to 28 U.S.C. § 2254. The petition has been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

---

[1] Houston named "Department of Corrections" as the respondent to this action. "[I]n habeas challenges to present physical confinement . . . the default rule is that the proper respondent is the warden of the facility where the prisoner is being held . . . ." *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004). Respondent informs the Court that Vicki Janssen is the warden at the facility where Houston is currently incarcerated. (*See* Resp. at 1 n.1 [Doc. No. 10].) Accordingly, the Clerk's Office is hereby directed to list Janssen as the respondent to this action. This substitution does not affect the substance of this Court's Recommendation in any way.

Respondent has filed an answer to the petition and a transcript of the trial at issue, as

ordered by this Court and required by Rule 5 of the Rules Governing Section 2254 Cases

in the United States District Courts.  After review of the petition, the answer, and

Houston's reply to that answer, this Court recommends that Houston's petition be denied

and that this action be dismissed with prejudice and on the merits.

## I.  Background

The Minnesota Court of Appeals described the facts of Houston's case as follows:

> Hennepin County charged Lamont [sic] Houston with one
> count of third-degree criminal sexual conduct stemming from
> a December 2011 incident in a North Minneapolis
> barbershop.  The jury at Houston's trial heard the following
> testimony describing the events.
>
> L.O. testified that she was walking in downtown Minneapolis
> with another woman one morning when a car pulled up and
> the driver asked if L.O. wanted some type of job.  L.O.
> pointed out Houston to the jury, indicating that he was the
> driver.  L.O. got in Houston's car.  Houston drove to a
> barbershop in North Minneapolis and told L.O. that he had to
> make a "pit stop."
>
> They both went inside, and Houston spoke with the owner,
> James Spencer.  The men told L.O. to wait in the bathroom so
> they could speak privately.
>
> L.O. described for the jury how both men came into the
> bathroom successively and raped her.  Houston was first.  He
> came in the bathroom several minutes after L.O. had entered.
> He yelled at her, demanding that she take off her pants.  She
> was afraid and complied.  She said that Houston produced a
> condom, put it on, and penetrated her vaginally against her
> will.  Houston left L.O. crying on the bathroom floor.  Soon
> Spencer entered, and he also penetrated her vaginally against
> her will.  He used the same kind of condom that Houston
> used.  She said that both men threw their condom wrappers
> into the bathroom garbage can.

L.O. testified that she left the barbershop with Houston, shaking badly.  He drove her to a drugstore parking lot and left her there.  An employee found L.O. and called police.  The police helped L.O. locate the barbershop, and she identified Spencer as one of her assailants.  She later identified Houston from surveillance photos taken downtown near where she first encountered him.  L.O. denied ever offering to engage in sex or even discussing sex with Houston.

The two officers who responded to the call testified, corroborating L.O.'s account.  One officer described L.O. as being very emotional, "rocking back and forth" at first, and very nervous when they found the barbershop.  The officers found two condom wrappers in the bathroom garbage can and one used condom floating in the toilet.  They identified Spencer from L.O.'s description.

A nurse who examined L.O. testified that her examination revealed vaginal tearing and bleeding, which are both consistent with L.O.'s description of a sexual assault.  And the state introduced forensic evidence establishing that the condom that police found in the barbershop bathroom contained both L.O.'s and Spencer's DNA.

The state called Spencer to testify.  Spencer came to court from prison, having already been convicted for his role.  Outside the jury's presence, Spencer implicitly invoked his Fifth Amendment right not to testify, stating that he wanted to wait until the attorney handling his appeal arrived.  But the district court ordered him to testify, and Spencer obeyed the order.  He told the jury that Houston came to his barbershop with a woman who matched L.O.'s description and that Houston asked if they could use the bathroom.  He described, "It wouldn't take [a] rocket scientist to know that they were having sex in there."  Spencer conceded that he had sex with L.O., but he denied hearing anyone yelling beforehand while Houston and L.O. were in the bathroom.  He said that L.O. was not disheveled when he went in the bathroom and that she left voluntarily in Houston's car.  He acknowledged that he had testified at his own trial that he thought Houston had paid L.O. for sex before they arrived.

Houston testified in his own defense.  He said that he had
been downtown looking for a friend when he noticed L.O.
and her companion.  According to Houston, L.O. offered to
perform oral sex for $20.  He accepted her offer and drove to
find seclusion.  He testified that they ended up in a parking lot
outside Spencer's barbershop.  He asserted that he removed a
condom from its wrapper, put the wrapper in his pocket, and
had begun putting the condom on when Spencer walked up.
He said that Spencer also wanted to engage in sex with L.O.,
so the three went into the barbershop.  He testified that,
before they entered, he discarded the condom in a garbage
can.  Also according to Houston's testimony, L.O. said that
she wanted to engage in vaginal sex rather than oral sex.
They then went inside the bathroom, where Houston threw
away the previously discarded condom's wrapper and opened
the wrapper of another condom.  He told the jury that he then
noticed that L.O. had "a smell . . . that wasn't right," and he
therefore declined to have sex with her.  He said he left the
bathroom and gave the condom to Spencer.  Houston
acknowledged on direct examination that he had previously
pleaded guilty to two unrelated felonies.

After Houston finished giving his account, the prosecutor
played the jury a recording of an interview Houston gave to
the investigating officer.  In that interview, Houston initially
denied any sexual behavior with L.O.  He stated that he had
taken a black woman to the barbershop but denied having had
sex with anyone.  Houston changed his story after the
interviewing officer told him that Spencer had given a
different account and that footage from a security camera put
him at the scene where L.O. said he picked her up; Houston
then said that he had picked up two white women.  He
claimed that L.O.'s companion gave him $10 to drive her to a
drugstore, and he asserted that he and the two women had
been accompanied by two of Houston's male friends.
Houston had also claimed that he dropped off L.O.'s friend,
leaving Houston, L.O., and Houston's two friends in the car.
He said that the four of them went to Spencer's barbershop,
where they all smoked marijuana.  Houston said that he left
the barbershop alone, leaving behind L.O. and his two
friends.  He told the interviewing officer that he never had sex

4

with L.O. or anyone else, and he suggested that someone
must be trying to frame him.

After hearing the interview recording at trial, Houston
attempted to explain the discrepancies between his interview
account and his trial testimony.  He testified that the
investigator had not asked the questions that would have
prompted him to give the details that he provided at trial.  The
prosecutor asked about his prior convictions, which Houston
acknowledged were of second-degree sale of a controlled
substance and felony domestic assault.

During his closing argument, the prosecutor urged the jury to
consider Houston's two felony convictions when assessing
his credibility, but the district court never gave a limiting
instruction requiring the jury to so limit its consideration of
the convictions.

The jury found Houston guilty.

*Houston*, 2014 WL 5313711, at *1-3.

Houston asked the Minnesota Court of Appeals to reverse the conviction on six

grounds — three grounds raised through counsel, and three grounds raised in a pro se

supplemental brief:

*First*, testimony was admitted into evidence regarding Houston's previous

convictions for felony domestic assault and second-degree sale of a controlled substance.

Under Rule 609(a) of the Minnesota Rules of Evidence, prior convictions may be used as

evidence of a defendant's credibility, but not as evidence of the defendant's character or

conduct more generally.  *See also* 10 Minn. Prac., Jury Instr. Guides, CRIMJIG 2.02

(5th ed.).  Trial courts are required under Minnesota law to give a limiting instruction at

the time the evidence of prior convictions is admitted.  *See State v. Bissell*,

368 N.W.2d 281, 283 (Minn. 1985).  The judge at Houston's trial did not do so.  Because

Houston had not requested a limiting instruction, the Minnesota Court of Appeals reviewed the trial court's failure to give the limiting instruction for plain error and found that "[t]he requirement for a prompt, sua sponte instruction is well settled, and the district court's failure to provide the instruction here therefore constitutes a plain error.  The district court compounded that plain error by failing to issue a limiting instruction even at the end of the trial in its final instructions."  *State v. Houston*, 2014 WL 5313711, at *3.  "Under these circumstances," the Minnesota Court of Appeals went on, "Houston makes a nearly successful argument for reversal."  *Id*. at *4.  The court went on to say:

> We do not reverse on this ground, however, because the evidence of Houston's guilt is so overwhelming that any prejudicial effect by the district court's failure to properly instruct the jury is marginal by comparison.  The jury heard L.O.'s account that Houston and Spencer raped her.  It heard the corroborating testimony of the responding police and the examining nurse.  The jury learned that the DNA evidence also corroborated L.O.'s account.  In contrast to the consistent evidence of Houston's guilt, the jury also heard Houston's multiple irreconcilable accounts of his own behavior, including the recording of his nonsensical rendition in the police interview.  In that interview, Houston first insisted to the officer that he had brought "a black girl" to the barbershop and that he "never picked up a white girl."  But police then revealed to Houston that Spencer had already told them that the woman Houston brought to the barbershop was white (like L.O.), and not black, and that Spencer told them that Houston had sex with the woman in the bathroom.  Houston's story then instantly transformed: "*Now* . . . I'm seeming to remember.  I picked up two *white* girls, it was two *white* girls."  Between Houston's vacillating police interview and his trial testimony, the jury heard at least three fundamentally inconsistent and contradictory accounts that differed wildly on the most basic facts, including whether he had others in his car, whether he took *anyone* to the barbershop, whether he picked up one woman or two women, whether the woman he picked up was a stranger, whether he

6

> knew that the second woman's name was "Kathy," whether
> the woman he took to the barbershop was white or black,
> whether he first saw Spencer while in the car or in the
> barbershop, whether Houston ever went into the bathroom
> with the woman, whether he and the woman discussed
> engaging in a sex act, and whether he left the barbershop
> before Spencer emerged from the bathroom.  Houston's
> varying stories stumbled down different paths to different
> conclusions; he was simply an incredible witness in the face
> of the very compelling evidence of his guilt.  On this record it
> is impossible for us to suppose that the jury improperly
> convicted Houston because of his prior convictions rather
> than because of the evidence that he had sex with L.O. against
> her will.

*Houston*, 2014 WL 5313711, at *4.

*Second*, Houston (through counsel) argued that the trial court erred by requiring

Spencer, his co-defendant, to testify on the state's behalf after Spencer asserted his Fifth

Amendment right not to testify.  The Minnesota Court of Appeals found that Houston

lacked standing to assert a claim based on Spencer's Fifth Amendment rights:  "'The

general rule is that the fifth amendment privilege against self incrimination is personal to

the witness.'"  *Id.* at *5 (quoting *State v. Rice*, 411 N.W.2d 260, 262 (Minn. Ct. App.

1987)).

*Third*, Houston (again through counsel) argued that the prosecutor committed

several acts of misconduct during his closing argument, including:  (1) telling the jury

that "everyone loses" if Houston were not held accountable; (2) criticizing Houston for

exercising his right to trial; (3) telling the jury that Houston had lied while testifying; and

(4) misstating the presumption-of-innocence standard.  The Minnesota Court of Appeals

rejected each of these arguments.  Although the prosecutor had "made a general, brief

reference to accountability" in his closing argument, "[h]e then qualified the statement by urging the jury to reach a 'fair and just' verdict, maintaining the focus on the jury's role as fact finder." *Houston*, 2014 WL 5313711, at *6. The challenged statement, when placed in context, was not in error. *Id.* The prosecutor made an "ambiguous and confusingly worded" statement that implied Houston should have pleaded guilty, but the comment fell short of the kind of statements that the Minnesota courts had previously found required reversal of a conviction. *Id.* (citing *State v. McNeil*, 658 N.W.2d 228, 235-36 (Minn. Ct. App. 2003)). The prosecutor's closing statement properly presented facts to the jury showing irreconcilable contradictions in Houston's accounts, and thus the prosecutor had not erred in arguing that Houston made intentionally false statements of fact during his testimony. *Id.* at *6-7. Finally, the Minnesota Court of Appeals concluded that the prosecutor's comments regarding the presumption of innocence were not a misstatement of the legal standard. *Id.* at *7.

*Fourth*, Houston argued in a pro se supplementary brief that he received ineffective assistance of counsel when his attorney failed to request a cautionary instruction after referring during cross-examination to Spencer having testified at his own trial. The Minnesota Court of Appeals quickly dispatched the claim on the basis that Houston had not been prejudiced by the attorney's decision not to ask for a cautionary instruction. "Even if his trial counsel acted unreasonably in failing to request this instruction, the overwhelming weight of the evidence against Houston convinces us that the error did not affect the outcome of the trial." *Houston*, 2014 WL 5313711, at *7.

*Fifth*, Houston (again acting pro se) argued that the trial court judge should have recused himself, as the same judge had previously presided over Spencer's trial. The Minnesota Court of Appeals found that recusal was unnecessary; the case upon which Houston relied was inapposite, as "the challenged judge was not the fact-finder in the challenging defendant's trial." *Id.* (citing *State v. Osterkamp*, No. A11-1103, 2012 WL 3262953 (Minn. Ct. App. Aug. 6, 2012)).

*Sixth*, Houston argued in his pro se supplemental brief that the district court erred by allowing Spencer to testify in prison attire. *See* Minn. R. Crim. P. 26.03, subd. 2(b) ("During trial, an incarcerated defendant or witness must not appear in court in the distinctive attire of a prisoner."). Houston's counsel conceded at oral argument, however, that the record did not establish that Spencer appeared at trial in prison attire. *Id.* at *8.

Each of Houston's arguments having been rejected, the Minnesota Court of Appeals affirmed the conviction. Houston timely filed a petition for review with the Minnesota Supreme Court; the petition was declined. Houston then filed a petition for a writ of habeas corpus pursuant to § 2254, which is now before this Court for consideration.

## II. Analysis

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") sets forth the standards that govern this Court's substantive review of Houston's habeas corpus petition. The relevant portion of AEDPA, 28 U.S.C. § 2254(d), provides that:

> An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court
> shall not be granted with respect to any claim that was
> adjudicated on the merits in State court proceedings unless
> the adjudication of the claim —
>
>> (1) resulted in a decision that was contrary to, or
>> involved an unreasonable application of, clearly
>> established Federal law, as determined by the
>> Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an
>> unreasonable determination of the facts in light
>> of the evidence presented in the State court
>> proceeding.

In *Williams v. Taylor*, 529 U.S. 362 (2000), the United States Supreme Court discussed § 2254(d)(1) and how it should be applied by the federal district courts.  The Supreme Court recognized that

> a state-court decision can be "contrary to" this Court's clearly
> established precedent in two ways.  First, a state-court
> decision is contrary to this Court's precedent if the state court
> arrives at a conclusion opposite to that reached by this Court
> on a question of law.  Second, a state-court decision is also
> contrary to this Court's precedent if the state court confronts
> facts that are materially indistinguishable from a relevant
> Supreme Court precedent and arrives at a result opposite to
> ours.

*Id*. at 405.

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id*. at 413.  The Supreme Court also explained that

> [a] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .  [A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.

*Id.* at 409, 411.

A writ of habeas corpus may also be available where the state court's resolution of a prisoner's criminal case is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  In other words, habeas relief can be granted if the conviction is based on findings of fact that could not reasonably be derived from the state court evidentiary record.  When reviewing a state court decision, however, "a federal court . . . presumes that the state court's factual determinations are correct; this presumption may be rebutted only by clear and convincing evidence."  *Lee v. Gammon*, 222 F.3d 441, 442 (8th Cir. 2000).  In addition, 28 U.S.C. § 2254(e)(1) provides that

> [i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Needless to say, a federal district court is not allowed to conduct its own de novo review of a prisoner's constitutional claims.  *See Yarborough v. Alvarado*, 541 U.S. 652, 665 (2004) ("We cannot grant relief under AEDPA by conducting our own independent inquiry into whether the state court was correct as a *de novo* matter.").  "AEDPA . . .

imposes a highly deferential standard for evaluating state-court rulings and demands that

state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773

(2010) (citations and quotations omitted).  Habeas relief cannot be granted unless the

petitioner has identified and substantiated a specific error committed by the state courts.

Moreover, the petitioner must show that the state courts committed the type of error that

is actionable under § 2254, as that statute has been interpreted by the Supreme Court.

Finally, the petitioner "must show that the state court's ruling on the claim being

presented in federal court was so lacking in justification that there was an error well

understood and comprehended in existing law beyond any possibility for fair-minded

disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011).

### B.  Houston's Claims for Relief

Houston's habeas petition is not a model of clarity.  The petition purports to raise

only one ground for relief, but Houston lists the following "facts" in support of that single

ground:

> A) The cautionary instruction was not given to the jury when
> my felony background was brought into the argument.
>
> B) Co-defendand compelled to testify against his will after
> asserting his 5th ammendment right.
>
> C) The council did not object to multiple errors rendering him
> an ineffective assistant council.
>
> D) CC- pro se brief

(Pet. at 5 (sic throughout) [Doc. No. 1].)  More accurately, then, Houston is raising six

claims for relief — the three he mentions expressly, plus the three raised in his pro se

brief before the Minnesota Court of Appeals.  These claims track roughly, but imperfectly, with the six arguments raised by Houston at one point or another on direct appeal: (1) the failure of the trial court to give a cautionary instruction after admitting testimony regarding Houston's criminal history; (2) the alleged violation of the co-defendant's Fifth Amendment rights; (3) prosecutorial misconduct; (4) ineffective assistance of counsel in failing to request a cautionary instruction regarding testimony that Houston's co-defendant had gone to trial; (5) refusal of trial court to recuse himself from the matter; and (6) allowing the co-defendant to testify in prison attire.

This Court notes, however, that none of Houston's claims have been particularly well-developed in these proceedings.  For all intents and purposes, no memorandum was submitted in support of Houston's habeas petition,[2] and Houston's brief replying to respondent's answer is identical to the pro se supplemental brief submitted to the Minnesota Court of Appeals.  Houston has therefore provided no argument whatsoever in support of the three habeas claims not raised in his pro se supplemental brief — or even, for that matter, fully explained the exact scope of the claims being raised in these habeas proceedings.  This Court therefore assumes that Houston is attempting to raise each  of the claims that were litigated on appeal.  To the extent that Houston is attempting to raise additional claims, he has failed to exhaust those claims in the state courts and may not raise them in habeas proceedings in the first instance, as explained more fully below.

---

[2]  A document entitled "Memorandum of Law" was filed contemporaneously with the habeas petition, but that document says only that "[t]here were many things that the Appellate Court and the Supreme Court overlooked or [didn't] look at[.]  For these reasons are why I believe the case should be overturned, dismissed, or a retrial be granted."  (Pet'r Mem. at 1 [Doc. No. 4].)

## 1.   Cautionary Instruction Regarding Evidence of Prior Crimes

Houston's first claim — a claim described by the Minnesota Court of Appeals as his "most compelling argument" on direct appeal, *see Houston*, 2014 WL 5313711, at *3 — is that the trial court erred by failing to caution the jury that the evidence of Houston's prior convictions could be used only for the limited purpose of impeaching Houston's credibility. *See* Minn. R. Evid. 609(a).[3]   Houston's attorney did not object to the failure of the trial court to give a limiting instruction,[4] and so the Minnesota Court of Appeals reviewed the trial court's conduct for plain error.   Pursuant to state law, a defendant "can prevail on that standard only if he shows that an unobjected-to error occurred, that the error was plain, and that the error affected his substantial rights." *Houston*, 2014 WL 5313711, at *3 (citing *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998)). Applying that standard, the Minnesota Court of Appeals found that Houston had demonstrated that the first two prongs of that test were met; Minnesota law requires that a trial court "should instruct the jury of this limited purpose of the prior-conviction

---

[3]  Rule 609(a) provides in full: "For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect, or (2) involved dishonesty or false statement, regardless of the punishment."

[4]  Houston did not argue on direct appeal that his counsel was constitutionally ineffective in failing to raise this objection.  Because such an ineffective-assistance claim would have been known to Houston at the time of the appeal but not presented, he is now barred from raising it in a petition for post-conviction relief in state court. *See State v. Knaffla*, 243 N.W.2d 737, 741 (Minn. 1975).  Houston has not alleged an adequate cause for the failure to raise the claim on direct review and thus the claim — if being raised at all — is now precluded from habeas review. *See* 28 U.S.C. § 2254(b)-(c).

evidence even if neither party requests the limiting instruction," *id.* (citing *Bissell*,

368 N.W.2d at 283), and this requirement of a prompt limiting instruction was well-

settled at the time the error was made by the trial court. Despite Houston having offered

"a nearly successful argument for reversal," though, the Minnesota Court of Appeals

declined to reverse the conviction on this ground, as "the evidence of Houston's guilt is

so overwhelming that any prejudicial effect by the district court's failure to properly

instruct the jury is marginal by comparison." *Id.* at *4.

   In his habeas petition, Houston is unclear whether his claim of error is premised in

federal law or state law. (*See* Pet. at 5 ("The cautionary instruction was not given to the

jury when my felony background was brought into the argument.").) Houston's claim

was presented to the Minnesota Court of Appeals entirely as an error of state law —

specifically, Rule 609(a) of the Minnesota Rules of Evidence. (*See* App'x at 40-45 [Doc.

No. 12].) Houston did not argue in state court, for example, that the error resulted in the

denial of his federal constitutional right to due process. *See Duncan v. Henry*,

513 U.S. 364, 366 (1995) (per curiam) ("If a habeas petitioner wishes to claim that an

evidentiary ruling at a state court trial denied him the due process of law guaranteed by

the Fourteenth Amendment, he must say so, not only in federal court, but in state court.").

Nor did Houston cite to the Minnesota Court of Appeals any other federal constitutional

principle that necessitated the reversal of his conviction.[5] Houston's petition for review

---

[5] Houston did cite a handful of federal cases to the Minnesota Court of Appeals in the
section of his brief arguing that his conviction should be overturned on account of the
failure to give a limiting instruction. (*See, e.g.*, App'x at 41 (citing *United States v.
Avarello*, 592 F.2d 1339, 1346 (5th Cir. 1979)).) But these cases were not cited because

before the Minnesota Supreme Court is starker still; *no* federal case, principle of law, or state case relying on a federal case or principle of law was cited by Houston to Minnesota's highest court in reference to this claim.  (*See* App'x at 13-14.)

The Minnesota state courts therefore reasonably understood Houston's claim to be entirely premised on state law.  *See Houston*, 2014 WL 5313711, at *3-4.  But "'federal habeas corpus relief does not lie for errors of state law.'"  *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)).  "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Id*. at 68 (citing *Rose v. Hodges*, 423 U.S. 19, 21 (1975)).  Thus, to the extent that Houston is claiming that the Minnesota Court of Appeals erred in applying Rule 609(a) of the Minnesota Rules of Evidence, that claim is simply not cognizable on habeas review.  *See* 28 U.S.C. § 2254(a) ("The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the

---

they stood for or interpreted a federal constitutional guarantee upon which Houston was relying.  Instead, the cases were cited because the Federal Rules of Evidence similarly restrict the use of evidence regarding prior convictions, and the justifications provided by federal courts for that federal rule are also applicable to the Minnesota rule relied upon by Houston.  But "[t]he Federal Rules of Evidence do not govern state court proceedings," *Williams v. Price*, 343 F.3d 223, 230 n.3 (3d Cir. 2003) (citing Fed. R. Evid. 101), and so the fact that the trial court may have acted inconsistently with the Federal Rules of Evidence is immaterial (unless the error infringed Houston's federal constitutional due-process rights, which Houston has never expressly argued).  Other federal cases were cited by Houston in explanation of the plain-error standard of review, but only because Minnesota courts have adopted the federal plain-error standard of review as their own. *See Griller*, 583 N.W.2d at 740-41 (citing *Johnson v. United States*, 520 U.S. 461 (1997)).  Again, though, the federal cases are ultimately cited in support of a principle of *state* law, not because they point to a constitutional guarantee that Houston seeks to rely upon.

judgment of a State court *only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States*." (emphasis added)).

Only a claim that the Minnesota courts violated Houston's *federally* guaranteed rights is cognizable on habeas review. It is unclear whether Houston is seeking to now raise such a federal claim (it is not expressly mentioned in the habeas petition), but to the extent that he is, that claim has not been exhausted in the state courts. Before seeking habeas relief, a prisoner first must fairly present his claims to the state courts. *See, e.g.*, *White v. Dingle*, 267 Fed. App'x 489, 491 (8th Cir. 2008) (per curiam). "[T]o satisfy the 'fairly presented' requirement, [a habeas petitioner is] required to 'refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue' in the state courts." *Abdullah v. Groose*, 75 F.3d 408, 411-12 (8th Cir. 1996) (quoting *Ashker v. Leapley*, 5 F.3d 1178, 1179 (8th Cir. 1993)). "[P]resenting a claim to the state courts that is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." *Id.* at 412. "When a State has a two-tiered appellate review system, as does the State of Minnesota, a prisoner must exhaust both appellate levels before presenting his claims in Federal Court." *Hamilton v. Roehrich*, 628 F. Supp. 2d 1033, 1045 (D. Minn. 2009).

As explained above, Houston did not argue before the Minnesota Supreme Court and Minnesota Court of Appeals that the failure to give a limiting instruction regarding the use of his prior convictions as evidence violated his federal constitutional rights. By failing to raise the claim on direct appeal, the claim is now procedurally defaulted in state

17

court.  *See* Minn. Stat. § 590.01, subd. 1 ("A petition for postconviction relief after a

direct appeal has been completed may not be based on grounds that could have been

raised on direct appeal of the conviction or sentence.").  Houston has therefore forfeited

the opportunity to fairly present his claim of federal error to the state courts.

Accordingly, he is barred from presenting the claim on federal habeas review unless he

can demonstrate cause and prejudice for the default.  *See Morgan v. Javois*, 744 F.3d 535,

538 (8th Cir. 2013).  Houston has not suggested any adequate cause for failing a claim of

federal error on direct appeal, and no such cause appears to this Court.  The claim of

federal error — again, if any such claim is in fact being raised here — must be dismissed.

### 2.  Compelled Testimony from Co-Defendant

Houston next argues that the trial court violated his Fifth Amendment rights by

requiring Spencer, his co-defendant, to testify on the state's behalf, despite Spencer

having invoked his right not to testify.  This claim is grounded in the federal

constitutional right against self-incrimination and is therefore cognizable on federal

habeas review.  *See* 28 U.S.C. § 2254(a).  However, Houston is entitled to habeas relief

only if he can show that the Minnesota Court of Appeals decision denying him relief

"was contrary to, or involved an unreasonable application of, clearly established Federal

law, as determined by the Supreme Court of the United States . . . ."  28 U.S.C.

§ 2254(d)(1).  Never has the United States Supreme Court held that a defendant may

invoke the violation of a third-party's Fifth Amendment rights as a ground for vacating

his own conviction.  Indeed, the Supreme Court has strongly suggested just the opposite.

*See United States v. Nobles*, 422 U.S. 225, 234 (1975) ("We thus conclude that the Fifth

18

Amendment privilege against compulsory self-incrimination, being personal to the

defendant, does not extend to the testimony or statements of third parties called as

witnesses at trial."); *Couch v. United States*, 409 U.S. 322, 328 (1973) ("It is important to

reiterate that the Fifth Amendment privilege is a personal privilege: it adheres basically to

the person, not to information that may incriminate him.").  Other federal courts have still

more directly rejected the argument put forward by Houston.  *See United States v.

Robinson-Munoz*, 961 F.2d 300, 303 (1st Cir. 1992) ("[A] co-defendant cannot object to

the admission of a confessing defendant's inculpatory statement on the ground that the

confessing defendant's Fifth Amendment rights were violated.").  Houston cannot

demonstrate that the decision of the Minnesota Court of Appeals with respect to this

claim was "contrary to, or involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States," 28 U.S.C.

§ 2254(d)(1), and thus the claim is without merit.

### 3.  Prosecutorial Misconduct

Houston presented four claims of prosecutorial misconduct to the Minnesota Court

of Appeals.  *See Houston*, 2014 WL 5313711, at *5-7.  Those claims were grounded

entirely in state law, (*see* App'x at 46-54),[6] and thus would not be cognizable on habeas

review if raised here, *see King v. Kelley*, 797 F.3d 508, 512 (8th Cir. 2015) ("28 U.S.C.

---

[6]  Houston's brief to the Minnesota Court of Appeals did include a brief reference to the
federal constitutional right to due process in reference to his prosecutorial-misconduct
claims.  (*See* App'x at 46 ("Under the state and federal constitutions, the defendant in a
criminal case is entitled to due process of law, which includes the right to a fair trial.").)
But Houston cited nothing but state law (and cases from Minnesota courts applying state
law) in presenting his prosecutorial-misconduct claims to the Minnesota Court of
Appeals.  (*See id.* at 46-54.)

§ 2254 does not permit us to exercise de novo review over a state court's interpretation of state law."). Further, those claims of prosecutorial misconduct were not mentioned in Houston's petition for review before the Minnesota Supreme Court, and so any attempt to raise those claims now would be impeded by Houston's failure to fully exhaust state remedies. *See Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("Before seeking a federal writ of habeas corpus . . . the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim.").

That said, Houston does *not* raise claims of prosecutorial misconduct in his habeas petition. Instead, Houston alleges that his attorney "did not object to multiple errors" at trial. (*See* Pet. at 5.) In other words, Houston focuses in his habeas petition on the conduct of his attorney, not on the conduct of the prosecutor. Houston never clarifies the exact "errors" to which he is referencing, and so this Court presumes (interpreting Houston's pro se habeas petition broadly) that he is referencing the alleged instances of prosecutorial misconduct that he previously raised on direct appeal. Unlike the "direct" claims of prosecutorial misconduct, which were premised on state law and therefore not cognizable on habeas review, Houston's claims of ineffective assistance of counsel are premised on the Sixth Amendment and *Strickland v. Washington*, 466 U.S. 668 (1984), and therefore are cognizable on habeas review.

Still, these ineffective-assistance claims must be fully exhausted in the state courts before they may be raised on federal habeas review. *See* 28 U.S.C. § 2254(b)-(c). Never has Houston argued in the state courts that his trial counsel was ineffective for failing to

object to the prosecutor's statement that he be held accountable, or to the argument that

he lied on the stand, or for (arguably) criticizing his election to exercise his right to trial,

or for allegedly mischaracterizing the presumption of innocence.[7]

Those claims therefore are now procedurally defaulted in the state courts.[8]  Under

Minnesota law, "[o]nce a direct appeal has been taken from a conviction, 'all matters

raised therein, and all claims known but not raised, will not be considered upon a

subsequent petition for postconviction relief.'"  *Lindsey v. State*, No. A13-0592, 2014

WL 103399, at *3 (Minn. Ct. App. Jan. 13, 2014) (quoting *State v. Knaffla*,

243 N.W.2d 737, 741 (Minn. 1975)); *see also* Minn. Stat. § 590.01, subd. 1.  Defendants

in Minnesota are generally required to raise ineffective-assistance-of-counsel claims on

direct appeal if those claims are known to the defendant at the time of the appeal.  *See*

*Robledo-Kinney v. State*, 637 N.W.2d 581, 585 (Minn. 2002) ("[P]ostconviction claims

of ineffective assistance of trial counsel are generally precluded if known at the time of

direct appeal.").  Ineffective-assistance-of-counsel claims must also be raised on a claim

by claim basis for purposes of determining exhaustion.  *See Robinson v. State*, 567

N.W.2d 491, 494 n.2 (Minn. 1997) (denying review of ineffective-assistance-of-counsel

---

[7]  Again, Houston did raise claims of prosecutorial misconduct before the Minnesota
Court of Appeals.  But those claims related to what the *prosecutor* did, not what *defense
counsel* did (or failed to do).  Not once prior to these habeas proceedings did Houston
allege that his trial counsel was ineffective for failing to object to the alleged instances of
prosecutorial misconduct.  And in any event, no reference was made to the prosecutorial-
misconduct claims in Houston's petition for review before the Minnesota Supreme Court.

[8]  Similarly, Houston did not argue on direct appeal that his defense counsel was
ineffective in not objecting to the trial court's failure to give a limiting instruction
regarding the use of evidence about prior convictions.  Accordingly, this ineffective-
assistance claim is also procedurally defaulted.  *See* Minn. Stat. § 590.01, subd. 1.

claims where the plaintiff attempted to raise such claims for the first time on appeal by alleging new facts and adding specific claims of failure to investigate by his trial counsel). The facts regarding his counsel's allegedly deficient performance at trial would have been known to Houston at the time of his direct appeal — after all, the alleged prosecutorial misconduct was known to Houston and raised by his appellate attorney before the Minnesota Court of Appeals. Moreover, Houston raised a *different* ineffective-assistance-of-counsel claim on direct appeal (which is discussed more fully below), demonstrating that he understood ineffective-assistance claims could in fact be raised at that stage of the proceedings. Houston's failure to argue on direct appeal that his counsel was ineffective in failing to object to the alleged instances of prosecutorial error precludes him from now raising those specific ineffective-assistance claims in the state courts.

Where "no state court remedy is available for the unexhausted claim — that is, if resort to the state courts would be futile — then the exhaustion requirement in § 2254(b) is satisfied, but the failure to exhaust 'provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default . . . .'" *Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005) (quoting *Gray v. Netherland*, 518 U.S. 152, 162 (1996)). Houston has not attempted to demonstrate that the necessary "cause and prejudice" exists here; by all indications, there was nothing preventing Houston from raising each of his ineffective-assistance claims on direct

review,[9] and so Houston cannot plausibly argue he had adequate cause for the default.

Accordingly, Houston's failure to exhaust, coupled with the subsequent procedural

default, prevents this Court from reviewing any claim that his trial counsel was

ineffective by failing to object to the four instances of alleged prosecutorial misconduct

identified above.

### 4.  Ineffective Assistance of Counsel

Houston alleges in his habeas petition that his defense counsel provided

ineffective assistance by failing to "object to multiple errors" at trial.  (Pet. at 5.)  But as

explained above, Houston largely failed to raise ineffective-assistance claims on direct

appeal, and he is now barred from raising new ineffective-assistance claims in a petition

for postconviction relief in state court.  Habeas relief will forever be unavailable on those

unexhausted, procedurally defaulted claims.  *See* 28 U.S.C. § 2254(b)-(c).

Houston did, however, raise one specific ineffective-assistance claim in his pro se

supplemental brief before the Minnesota Court of Appeals.  During Spencer's cross-

examination, Houston's attorney asked a question that acknowledged Spencer had

already gone to trial.  (*See* Tr. at 224 ("Q: Did you testify at your trial that you thought

that Boo, or Mr. Houston, had paid [L.O.] for the sex?  A: Yes, that was my first

thought.") [Doc. No. 18].)  Later in his testimony, Spencer (without prompting) stated

that he was "already in prison."  (*Id*. at 237.)  Houston argued before the Minnesota Court

of Appeals that his counsel rendered ineffective assistance by failing to object to this

---

[9]  Houston's appellate counsel did not represent him at trial.  (*See* Pet. at 13 (listing Chris
Petros as trial counsel and Anders J. Erickson as appellate counsel).)

testimony and failing to seek a cautionary instruction from the trial judge that the jury should not draw a negative inference against Houston from Spencer's trial or incarceration.  The Minnesota Court of Appeals succinctly rejected this claim: "Even if his trial counsel acted unreasonably in failing to request this instruction, the overwhelming weight of the evidence against Houston convinces us that the error did not affect the outcome of the trial."  *Houston*, 2014 WL 5313711, at *7.

Respondent contends that this claim should, like Houston's other ineffective-assistance claims, be dismissed for failure to exhaust state remedies.  Although Houston raised the claim before the Minnesota Court of Appeals, says respondent, he "did not file a petition with the Minnesota Supreme Court seeking review of his pro se claims." (Resp. Mem. at 13 [Doc. No. 11].)  "When a State has a two-tiered appellate review system, as does the State of Minnesota, a prisoner must exhaust both appellate levels before presenting his claims in Federal Court."  *Hamilton*, 628 F. Supp. 2d at 1045.

Respondent is correct that Houston did not file a pro se petition for review or memorandum before the Minnesota Supreme Court.  However, the petition for review that Houston's attorney filed with the Minnesota Supreme Court lists the following legal issues:

> I.  Is it reversible error for a trial court to not provide a jury with a cautionary instruction at any time during a trial explaining to the jury that prior conviction impeachment evidence cannot be used as substantive evidence of the defendant's guilt? . . .
>
> II.  Does a defendant have standing to challenge a trial court's decision to allow the testimony of a co-defendant into evidence where the co-defendant was forced to testify after

24

> properly invoking his Fifth Amendment right to remain
> silent? . . .
>
> III.  All issues raised in Petitioner's pro se supplemental brief
> filed with the court of appeals on March 24, 2014.

(App'x at 7-8); *see also* Minn. R. Crim. P. 29.04, subd. 3 (describing the necessary

contents of a petition for review before the Minnesota Supreme Court in criminal cases).

Because the issues raised in Houston's pro se brief before the Minnesota Court of

Appeals were presented to the Minnesota Supreme Court through his attorney's petition

for review, there was no need for Houston to file a separate pro se petition for review.

Each of the issues raised in Houston's pro se brief — that is, the ineffective-assistance

claim discussed in this section, and the two claims reviewed below — has been fully

exhausted and eligible for review in these habeas proceedings.

To prevail on a claim of ineffective assistance of counsel, Houston must show that

his counsel's performance fell below an objective standard of reasonableness, *see*

*Strickland*, 466 U.S. at 687-88, and that there is a reasonable probability that, but for his

counsel's errors, the result of his proceeding would have been different, *id*. at 694.  "The

first prong requires a showing that counsel made errors so serious that counsel was not

functioning as the counsel guaranteed the defendant by the Sixth Amendment."  *White v.*

*Dingle*, 757 F.3d 750, 752 (8th Cir. 2014) (quotations omitted).  "The second prong

requires a showing that there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different."  *Id*. at 753

(quotations omitted).  "'Failure to establish either *Strickland* prong is fatal to an

ineffective-assistance claim.'"  *United States v. Kehoe*, 712 F.3d 1251, 1253 (8th Cir.

2013) (quoting *Worthington v. Roper*, 631 F.3d 487, 498 (8th Cir. 2011)).  Because

Houston's ineffective-assistance claim is brought pursuant to § 2254, Houston must also

show that the decision of the Minnesota courts rejecting his ineffective-assistance claim

"was contrary to, or involved an unreasonable application of, clearly established Federal

law, as determined by the Supreme Court of the United States" or "resulted in a decision

that was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding."  28 U.S.C. § 2254(d).

     The Minnesota Court of Appeals decided Houston's ineffective-assistance claim

solely on the basis of the second prong; regardless of whether the counsel had erred in

failing to request a cautionary instruction, that error had no impact on the proceedings,

that court concluded.  *Houston*, 2014 WL 5313711, at *7.  That finding was not contrary

to, or an unreasonable application of, clearly established Federal law.  As explained by

the Minnesota Court of Appeals in connection with a different claim, the case against

Houston was strong, and his defense was substantially undercut by his own incredible

testimony, recounted earlier in this Report and Recommendation.  *See Houston*,

2014 WL 5313711, at *4.  Added to those facts, the references to Spencer's trial and

conviction were brief, and neither the government nor the defense dwelled upon or

referred back to Spencer's conviction or incarceration after those facts slipped to the jury.

(*See* Tr. at 223-24.)  Under these circumstances, it is unlikely that Houston was

prejudiced by his attorney's failure to seek a cautionary instruction.  The rejection of

Houston's ineffective-assistance claim on that basis by the Minnesota Court of Appeals

was reasonable.

Finally, although the Minnesota Court of Appeals did not address the first *Strickland* prong, it should be noted that courts "'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' and when 'determining whether counsel's representation was deficient, a court must avoid second guessing trial strategy.'" *Calkins v. United States*, 795 F.3d 896, 897 (8th Cir. 2015) (quoting *Johnson v. United States*, 278 F.3d 839, 842 (8th Cir. 2002)). The absence of an objection to potentially prejudicial testimony, or a failure to request a cautionary instruction regarding that testimony, often reflects not incompetence, but reasonable trial strategy. *Cf. Whitty v. State of Wisconsin*, 436 F.2d 401, 405 (7th Cir. 1970) (noting that "requests for cautionary instructions are often a matter of trial strategy . . . ."); *State v. Eling*, 355 N.W.2d 286, 293 (Minn. 1984) (noting that a decision by defense counsel not to seek a cautionary instruction about the fact that the defendant was wearing handcuffs "may have been a conscious decision by defense counsel to avoid calling attention to the fact that defendant was restrained. Such decisions are regularly made and are accepted as matters of trial tactics."). A cautionary instruction that Spencer's conviction and incarceration should not be held against Houston carried as much danger of highlighting for the jury that Spencer had been convicted at trial as it did potential for curing the mistake, especially in light of the exceedingly fleeting nature of Spencer's references to his trial and incarceration. Houston's exhausted ineffective-assistance claim should be rejected on the merits.

### 5.  Failure of Trial Court to Recuse

Houston next argues that the judge who presided over his trial should have recused himself from the matter, as that same judge had previously presided over the jury trial at which co-defendant Spencer was found guilty.  This claim is based on Rule 2.11 of the Minnesota Code of Judicial Conduct, which requires disqualification of a judge if that judge's impartiality could reasonably be questioned; and on *Osterkamp*, 2012  WL 3262953, which reversed a conviction where a trial judge solicited a factual basis from a defendant at a plea hearing, then acted as fact-finder at the defendant's bench trial after the defendant withdrew his guilty plea.  Houston's case is easily distinguishable from *Osterkamp* — the fact-finder at Houston's trial was a jury, not the judge, and the judge who presided over the trials never solicited a factual basis of guilt from Houston or Spencer — but more importantly for purposes of this recommendation, this claim must be denied for the simple reason that the claim is based entirely on state law, and thus is not cognizable on habeas review.  *See Nance v. Norris*, 392 F.3d 284, 289 (8th Cir. 2004) ("[E]rrors of state law are not cognizable in federal habeas courts."); 28 U.S.C. § 2254(a).  Nowhere has Houston cited a federal constitutional principle or a case relying on a federal constitutional principle for the proposition that a judge may not preside over a defendant's trial after having previously presided over a co-defendant's trial.  Because Houston's claim is founded entirely in state law (and a misreading of state law at that), the claim must be denied.

### 6.  Co-Defendant Allowed to Testify in Prison Attire

Finally, Houston renews his allegation that the trial court permitted Spencer to testify at trial wearing prison attire, notwithstanding the rule of Minnesota criminal procedure that "[d]uring trial, an incarcerated defendant or witness must not appear in court in the distinctive attire of a prisoner."  Minn. R. Crim. P. 26.03, subd. 2(b).  As pointed out by the Minnesota Court of Appeals, though, there is no evidence in the record that Spencer *did* appear at trial wearing prisoner attire.  *See Houston*, 2014 WL 5313711, at *8 ("But his argument is factually unsupported because, as he conceded through counsel at oral argument, the record does not establish that Spencer appeared in prison attire.").  Houston has not cited any evidence in the record overlooked or ignored by the Minnesota Court of Appeals regarding what Spencer wore at trial.  Without clear and convincing evidence that the factual finding of the Minnesota Court of Appeals — based on his own concession at oral argument — was incorrect, Houston's claim must be denied.  *See* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

### C.  Certificate of Appealability

A habeas corpus petitioner proceeding under § 2254 cannot appeal an adverse ruling on his petition unless he is granted a certificate of appealability ("COA").  *See* 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).  A COA cannot be granted unless

the petitioner "has made a substantial showing of the denial of a constitutional right."

28 U.S.C. § 2253(c)(2).  To make such a showing, "[t]he petitioner must demonstrate that

reasonable jurists would find the district court's assessment of the constitutional claims

debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  In this case, it is

highly unlikely that any other court, including the Eighth Circuit Court of Appeals, would

treat Houston's current habeas corpus petition differently than it is being treated here.

Houston has not identified, and this Court cannot discern, anything novel, noteworthy or

worrisome about this case that warrants appellate review.  It is therefore recommended

that Houston should not be granted a COA in this matter.


Accordingly, based on all the files, records, and proceedings herein **IT IS**

**HEREBY RECOMMENDED** that:

1.      Petitioner Lamar Houston's petition for a writ of habeas corpus [Doc.

No. 1] be **DENIED**.

2.      This action be **DISMISSED WITH PREJUDICE AND ON THE**

**MERITS**.

3.      No certificate of appealability be issued.

4.      **JUDGMENT BE ENTERED ACCORDINGLY**.


Dated:  May 3, 2016                        s/ *Hildy Bowbeer*
                                                    HILDY BOWBEER
                                                    United States Magistrate Judge

**NOTICE**

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:**  This Report and Recommendation will be considered under advisement 14 days from the date of its filing.  If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.